**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

MARGARET M. KEYES,

                                 Plaintiff,               1:17-cv-00955 (BKS/DJS)

v.

THE AYCO COMPANY, L.P., THE GOLDMAN SACHS
GROUP, INC., TIMOTHY D. O'HARA, SHERI L.
LYONS, and JOSEPH D. RIGABAR,

                                 Defendants.

---

**Appearances:**

*For Plaintiff:*
John B. DuCharme
DuCharme, Clark & Sovern, LLP
10 Maxwell Drive, Suite 205
Clifton Park, NY 12065

*For Defendants:*
Jill L. Rosenberg                           Beth A. Bourassa
Lisa B. Lupion                              Vitaliy Volpov
Orrick, Herrington & Sutcliffe, LLP       Whiteman Osterman & Hanna, LLP
51 West 52nd Street                  One Commerce Plaza
New York, NY 10019                 Albany, NY 12260

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff Margaret Keyes brings this action against Defendants Ayco Company, L.P. ("Ayco"), Goldman Sachs Group, Inc. ("Goldman Sachs"), Timothy O'Hara, Sheri Lyons, and Joseph Rigabar (together, the "Individual Defendants"), alleging that she was terminated from employment on the basis of her disability in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101–12213, and the New York State Human Rights Law (the

"NYSHRL"), N.Y. Exec. Law §§ 290–301. On October 20, 2017, Defendants moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), (Dkt. No. 18), which the Court converted to a motion for summary judgment, (Dkt. No. 24), to provide the parties "an opportunity to be heard" after Plaintiff disputed the "relevance . . . [and] accuracy of the documents [Defendants] relied upon" in moving for dismissal. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016). The parties engaged in limited discovery and submitted additional briefing under the summary judgment standard. (Dkt. Nos. 29, 33–35, 37). For the reasons below, Defendants' motion is granted in part and denied in part.

## II.     FACTS[1]

Plaintiff began working at Ayco, a limited partnership that provides financial counseling, investment management, and other financial services, (Dkt. No. 29-11, ¶ 1), in 1989 as an Associate General Counsel, (Dkt. No. 33, ¶ 9). Ayco was acquired by Goldman Sachs on July 2, 2003. (Dkt. No. 29-11, ¶ 5). At that time, Plaintiff was Vice President and Deputy General Counsel at Ayco, as well as a partner. (*Id.* ¶¶ 5, 7). Prior to the acquisition, Plaintiff entered into a Partner Agreement (the "Partner Agreement" or "April 2003 Partner Agreement") with Ayco and Goldman Sachs on April 14, 2003. (Dkt. No. 29-11, ¶ 7). The Agreement contained the following arbitration clause:

> Arbitration. Subject to the provisions of Sections 20 and 21 hereof, any dispute, controversy or claim between Partner and the Firm

---

[1] The facts are drawn from Defendants' statement of material facts, (Dkt. No. 29-11), Plaintiff's response thereto, (Dkt. No. 34), and the exhibits and affidavits attached to the parties' submissions. The facts are undisputed or taken in the light most favorable to Plaintiff, unless otherwise noted. The Court assumes familiarity with the Court's May 14, 2018 Decision, (Dkt. No. 24), which contains a full recitation of the allegations contained within the Verified Complaint, (Dkt. No. 1).

As Defendants note, (Dkt. No. 37, at 13–14), Plaintiff's affidavit submitted in support of her opposition to Defendants' motion for summary judgment contains extensive legal argument, which is prohibited by the Local Rules of this District. See N.D.N.Y. L.R. 7.1(a)(2) ("An affidavit must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports."). While the Court has reviewed the facts asserted in Plaintiff's affidavit, (Dkt. No. 33), its consideration of Plaintiff's legal arguments is confined to those contained within her memorandum of law, (Dkt. No. 35).

> arising out of or relating to or concerning the provisions of this Agreement, relating to or arising out of Partner's employment with the Firm or otherwise concerning any rights, obligations or other aspects of Partner's employment relationship in respect of the Firm ("Employment Related Matters"), shall be finally settled by arbitration in New York City before the American Arbitration Association (the "AAA") in accordance with the commercial arbitration rules of the AAA, and the parties may invoke the AAA's Optional Rules for Emergency Measures of Protection. The parties agree that any arbitration award may be entered as a judgment in any appropriate court.

(Dkt. No. 29-3, ¶ 19; Dkt. No. 33, ¶ 34). Plaintiff also signed a July 1, 2003 Pledge Agreement, (the "Pledge Agreement"), reiterating that Plaintiff "agreed . . . under the Partner Agreement to certain provisions regarding arbitration, choice of law and choice of forum, injunctive relief and submission to jurisdiction with respect to the enforcement of the Obligations" set forth in the Partner Agreement. (Dkt. No. 29-3, at 21).[2]

Following Goldman Sachs' acquisition, Plaintiff became the Chief Operating Officer and Vice President of Financial Counseling at Ayco, one of the company's "most important business units," in 2004. (Dkt. No. 33, ¶ 49). In 2005, she became a Senior Vice President. (Dkt. No. 29-

---

[2] Plaintiff avers that she also signed a July 1, 2003 "Amended and Restated Agreement of Limited Partnership" that contains an arbitration provision. (Dkt. No. 33, ¶¶ 36–38; Dkt. No. 33-1, at 12). The parties have focused on the arbitration provision in the April 2003 Partner Agreement, and the Court does as well. (*See, e.g.*, Dkt. No. 35, at 22–23).

The record also indicates that, in 2015 and earlier, Plaintiff consented to various agreements that contained arbitration-related clauses by accepting Restricted Stock Units ("RSUs") under Goldman Sachs' Stock Incentive Plan ("SIP"). (Dkt. Nos. 29-6, 29-7, 29-8, 29-9). The 2015 SIP Agreement provided that Plaintiff agreed to arbitrate "any dispute, controversy or claim between the Firm and [Plaintiff], arising out of or relating to or concerning the Plan or Applicable award agreement." (Dkt. No. 29-6, at 29). The "Signature Card For 2015 Year-End Awards and Consent to Receive Electronic Delivery" (the "2015 Signature Card") more broadly stated that Plaintiff agreed "to arbitrate . . . to the fullest extent permitted by law, all claims arising out of or relating to [her] employment with the Firm or the termination thereof, or otherwise concerning any rights, obligations or other aspects of my employment relationship with the Firm (collectively, 'Employment-Related Matters')." (Dkt. No. 29-9, at 2). Plaintiff contends that the instant motion should be denied under Federal Rule of Civil Procedure 56(d) on the grounds that Defendants have not provided the 2003 SIP Agreement which governed the RSU awards between 2005 and May 21, 2015. (Dkt. No. 35, at 27–28). The instant motion, however, can be decided by reference to the arbitration clause contained in the April 2003 Partner Agreement alone, which the parties do not dispute was in effect during the relevant time period. The Court, therefore, proceeds accordingly. To the extent Plaintiff's opposition can be construed as a motion under Rule 56(d) for discovery related to the SIP documents, (Dkt. No. 35, at 28), it is denied.

11, ¶ 4; Dkt. No. 33, ¶ 52). In July 2014, Plaintiff was diagnosed with breast cancer, for which she underwent "intensive and difficult" treatments. (Dkt. No. 33, ¶¶ 73–74). Plaintiff claims that she was terminated in 2016 on the basis of her disability in violation of the ADA and NYSHRL. (*Id.* ¶ 93).[3]

Plaintiff asserts claims against Ayco and Goldman Sachs under the ADA and NYSHRL, and against the Individual Defendants under the NYSHRL as aiders and abettors of employment discrimination. (Dkt. No. 1, ¶¶ 338–388). The parties do not dispute that the Partner Agreement contains an agreement to arbitrate and that Plaintiff, Goldman Sachs, and Ayco executed the Agreement. (See Dkt. No. 29-1, at 9; Dkt. No. 35, at 17). Plaintiff, however, argues that none of her claims are subject to arbitration because: (i) the Individual Defendants were not parties to the Partner Agreement between Plaintiff, Ayco, and Goldman Sachs, (Dkt. No. 35, at 12–15); (ii) dismissal of this action in favor of arbitration would preclude her from pursuing her state law claims under the NYSHRL against the Individual Defendants, (*id.* at 15–17); (iii) the arbitration agreement is substantively and procedurally unconscionable, (*id.* at 17–21); and (iv) the Partner Agreement should be considered a collective bargaining agreement ("CBA"), rather than a negotiated employment agreement, (*id.* at 21–26).

## III.   STANDARD OF REVIEW

As explained in the Court's May 14, 2018 Memorandum-Decision and Order, (Dkt. No. 24), Defendants originally moved to dismiss under Federal Rule of Civil Procedure 12(b)(6),

---

[3] Specifically, Plaintiff alleges that on September 7, 2016, Plaintiff advised Defendants that she was scheduled for breast reconstruction surgery on September 28, 2016 and would need time away from work to recover from the procedure. (Dkt. No. 1, ¶ 79). On September 12, 2016, Plaintiff was informed that Defendants "were giving [her] a 90-day notice of termination required under the Partner Agreement," with the option of characterizing her termination a voluntary "retirement." (*Id.* ¶ 81). When Plaintiff declined, she "was precluded from returning to [her] office to pick-up [her] personal possessions and records, and suffered the humiliation of being terminated." (*Id.* ¶ 84).

4

rather than to compel arbitration under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. Having converted the motion to dismiss to one for summary judgment to ensure that "all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion,'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)), the Court now considers materials extrinsic to the Complaint under the summary judgment standard to determine the arbitrability of Plaintiff's claims.

"[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (applying summary judgment standard even though "case [did] not fall squarely under section 4 of the FAA . . . because [defendants] never cross-moved to compel arbitration"). When deciding a motion for summary judgment, a court must consider "all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)) (alteration in original), and draw all reasonable inferences in favor of the non-moving party, *Nicosia*, 834 F.3d at 229. "If the undisputed facts in the record require[] the issue of arbitrability to be resolved against the Plaintiff as a matter of law," *Bensadoun*, 316 F.3d at 175, then a district court must grant summary judgment, dismissing the complaint in favor of arbitration. If, on the other hand, "there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4). Such "a trial is warranted only if there exists one or more genuine issues of material fact regarding whether the parties have entered into such an agreement." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012).

## IV. DISCUSSION

A court deciding whether to dismiss a parties' claims in favor of arbitration must consider: (i) "whether the parties agreed to arbitrate"; (ii) "the scope of that agreement"; (iii) "if federal statutory claims are asserted, [whether] Congress intended those claims to be nonarbitrable"; and (iv) if some, but not all, of the claims in the case are arbitrable, whether "to stay the balance of the proceedings pending arbitration." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)). "[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). "A party resisting arbitration on grounds that the arbitration agreement is invalid under a defense to contract formation, or that the arbitration contract does not encompass the claims at issue, bears the burden of proving such a defense." *Kulig v. Midland Funding, LLC*, No. 13-cv-4715, 2013 WL 6017444, at *2, 2013 U.S. Dist. LEXIS 161960, at *5 (S.D.N.Y. Nov. 13, 2013).

### A. Agreement to Arbitrate

The parties disagree over whether the Partner Agreement entitles the Individual Defendants to invoke the arbitration agreement in an effort to dismiss the claims against them in favor of arbitration. (*See* Dkt. No. 29-1, at 15; Dkt. No. 35, at 12). Furthermore, Plaintiff argues that "there is no enforceable agreement to arbitrate" her claims because the arbitration agreement within the Partner Agreement is "void under New York's contract principles of law," including procedural and substantive unconscionability. (Dkt. No. 35, at 17–21). The Court considers these arguments in turn below.

6

1. **Arbitrability of Claims Against the Individual Defendants**

Plaintiff argues that the Individual Defendants' motion must fail because they "cannot establish that they are third party beneficiaries" of the Partner Agreement, which "was not intended for the benefit of any third parties, including the Individual Defendants." (Dkt. No. 35, at 14 (citing Dkt. No. 29-3, ¶ 24(e))).[4] Defendants respond that "an employee of an entity that is a party to an arbitration agreement *can* enforce that arbitration agreement, regardless of whether they are third-party beneficiaries to the agreement." (Dkt. No. 37, at 12).

As Defendants note, common law principles of contract law, including equitable estoppel, have been recognized in some circumstances to allow non-signatories to enforce an arbitration agreement. *Ragone v. Alt. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010). "Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed . . . and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *Ragone*, 595 F.3d at 126–27 (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)). "Signatories have thus been estopped from avoiding arbitration of claims against a non-signatory when they could have brought the same claims against the other signatory" or "where plaintiffs' claims against a non-signatory allege interdependent and coordinated conduct between the signatory and the non-signatory, such that the non-signatory might logically be part of any

---

[4] Plaintiff cites to the parties' agreement that, "[e]xcept as expressly provided herein, the Agreement shall not confer on any person other than Acquiror [Goldman Sachs], the Firm [Ayco] and each Partner any rights or remedies hereunder." (Dkt. No. 29-3, ¶ 24(e)). Plaintiff's argument assumes that only Plaintiff was a partner under that provision. The parties did not address whether the Individual Defendants also fall within this provision applicable to "each partner." In any event, because the issue can be decided on other grounds, the Court need not address that issue.

arbitration between the signatories." *Holzer v. Mondadori*, No. 12-cv-5234, 2013 WL 1104269, at *13, 2013 U.S. Dist. LEXIS 37168, at *41 (S.D.N.Y. Mar. 14, 2013); *see also Denney v. BDO Seidman LLP*, 412 F.3d 58, 70 (2d Cir. 2005) (holding that, where concerted action between signatory and non-signatory defendants is alleged, plaintiffs cannot "escape the consequences of those allegations by arguing" that the non-signatory defendant lacked "the requisite close relationship" to compel arbitration").

"[W]hen courts have estopped a party from avoiding arbitration, their reasoning has tended to focus upon whether the non-signatory asserting estoppel is a subsidiary, affiliate, agent, employee or other related business entity of a signatory to the agreement to arbitrate." *Holzer*, 2013 WL 1104269, at *13, 2013 U.S. Dist. LEXIS 37168, at *42–43. Even where defendants "are neither signatories to nor third-party beneficiaries of any agreement," "[c]ourts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (explaining further that, "[i]f it were otherwise, it would be too easy to circumvent the agreements by naming individuals as defendants instead of the entity Agents themselves"); *see also Washington v. William Morris Endeavor Entm't, LLC*, No. 10-cv-9647, 2011 WL 3251504, at *9, 2011 U.S. Dist. LEXIS 81346, at *28 (S.D.N.Y. July 20, 2011) (permitting non-signatory employees to invoke provision in arbitration agreement, noting that they were "the actors who carry out the company functions" and the allegations against them related "to the manner in which they executed their duties as . . . employees"); *Cicchetti v. Davis Selected Advisors*, No. 02-cv-10150, 2003 WL 22723015, at *3, 2003 U.S. Dist. LEXIS 20747, at *9–10 (S.D.N.Y. Nov. 17, 2003) (holding that plaintiff's claims "should be resolved together"

in arbitration where they "involve[d] the very same issues and circumstances and [were] all directly related to [the non-signatory's] employment" with the signatory defendant).

Here, the facts in the Verified Complaint indicate that the Individual Defendants, who were employees and executives of Ayco, acted in concert with Ayco and Goldman Sachs to discriminate against Plaintiff. Specifically, Plaintiff alleges that: the "corporate culture" fostered by Ayco and Goldman Sachs caused her to be "stigmatized by" the Individual Defendants following her diagnosis; that Goldman Sachs' Global Head of Private Wealth Management, one of her supervisors, contributed to her stigmatization within the corporate structure; that the Individual Defendants, including Ayco's Chief Executive Officer, "played a substantial role in creating the false and inaccurate stigma" around her and in selecting her for termination because of her disability; that Ayco executives, in addition to and including the Individual Defendants, "reported directly" to managing executives at Goldman Sachs; and that Goldman Sachs approved their decision to terminate Plaintiff. (Dkt. No. 1, at ¶¶ 21, 36–42, 44–49, 53–54, 58–59, 63–64, 83–86). Plaintiff characterizes the conduct of the Individual Defendants leading up to her termination as part of a "well developed strategy Ayco and Goldman Sachs used to mask discriminatory acts." (Dkt. No. 33, ¶ 84). In sum, the facts underlying Plaintiff's allegations against Ayco overlap with those against the Individual Defendants, whose conduct, Plaintiff alleges, was supervised, condoned, and exacerbated by Goldman Sachs.

In light of these allegations, there is "no question that the subject matter of the dispute" between Plaintiff and the Individual Defendants "is factually intertwined with the dispute between" Plaintiff, Ayco, and Goldman Sachs. *Ragone*, 595 F.3d at 128. "It is, in fact, the same dispute: whether or not [Plaintiff] was subjected to acts of [discrimination] which were condoned by supervisory personnel" at Ayco and Goldman Sachs. *Id.* The Court concludes that "the events

9

underlying . . . [P]laintiff's claims against [the] defendants are so intertwined that it would be inefficient and unfair for the same witnesses to appear both in an arbitration proceeding, and then again in a separate litigation relating to the same matters in dispute." *Ragone*, 2008 WL 4058480, at *10, 2008 U.S. Dist. LEXIS 66369, at *31. It would, therefore, "be inequitable to allow . . . [P]laintiff to treat [Defendants] as intertwined for the purposes of the Complaint, but 'escape the consequences of these allegations by arguing' that there is not a sufficiently close relationship between the two defendants to warrant the Court's application of equitable estoppel." *Id.* Accordingly, Plaintiff is estopped from avoiding arbitration with the Individual Defendants.

### 2. Unconscionability

Plaintiff asserts that the Partner Agreement is unconscionable and, therefore, unenforceable. Under New York law,[5] a contract is unconscionable when it is "so grossly unreasonable . . . in the light of the mores and business practices of the time and place as to be [unenforceable] according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988). "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made." *Id.* (internal quotation marks omitted). "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract[, per se]." *Ragone*, 595 F.3d at 121–22 (alteration in original) (quoting *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (2d Dep't 1983)).

---

[5] The parties assume that New York state law applies and the Court does as well. *See* Partner Agreement, Dkt. 29-3, ¶ 22 (agreeing that New York state law governs); *Ragone*, 595 F.3d at 121 (ruling that issue of "unconscionability of [an] arbitration agreement must be resolved first, as a matter of state law" and applying New York state law based upon the parties' choice of law clause (internal quotation marks omitted)).

### a. Procedural Unconscionability

Plaintiff argues that the Partner Agreement was procedurally unconscionable because "she lacked meaningful choice regarding the arbitration provisions," "there was a disparity in bargaining power between the parties," and Defendants did not "clearly and unmistakably put [her] on notice that it included statutory clams for employment discrimination." (Dkt. No. 35, at 20; Dkt. No. 33, ¶ 124).

"In determining whether an agreement is procedurally unconscionable, New York courts analyze factors such as the setting of the transaction, whether the party seeking to enforce the contract used high pressure tactics or deceptive language in the contract, whether there is inequality of bargaining power between the parties, and the experience and education of the party claiming unconscionability." *Washington*, 2011 WL 3251504, at *7, 2011 U.S. Dist. LEXIS 81346, at *21–22 (citing *Morris v. Snappy Car Rental, Inc.*, 84 N.Y.2d 21, 31 (1994), and *Gillman*, 73 N.Y.2d at 11).

Plaintiff has not identified a basis upon which the Court could conclude that the Partner Agreement was procedurally unconscionable. Although Plaintiff asserts that she had no leverage by which to negotiate the arbitration agreement because of her status as a limited partner, she does not allege that she ever attempted to negotiate the terms of the Agreement. (Dkt. No. 33, ¶¶ 22, 32). Plaintiff argues that there was a disparity in bargaining power because the Agreement was offered on an "as is" basis, and because she "loved [her] job, wanted to retain [her] employment position, and protect [her] investment." (Dkt. No. 33, ¶¶ 31, 127). Arbitration agreements, however, "are enforceable despite inequality in bargaining power." *See Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190 (1st Dep't 2004). And, even if Ayco and Goldman Sachs offered the Partner Agreement on a "take-it-or-leave-it" basis, "it is plain that 'this is not sufficient under New York law to render the [arbitration] provision procedurally

11

unconscionable.'" *Ragone*, 595 F.3d at 122 (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F.Supp.2d 566, 571 (S.D.N.Y.2009)). There are no allegations that Defendants used high-pressure or coercive tactics. While Plaintiff argues that "no employee or representative of Ayco or Goldman Sachs advised [her] in words or substance" regarding the implications of the arbitration agreement, (Dkt. No. 33, ¶ 124), Plaintiff is a highly educated person who, at the time she signed the Agreement, was an attorney in good standing in New York and Deputy General Counsel at Ayco. (Dkt. No. 34, at 2). There is no evidence that she was precluded from reading the Partner Agreement, disputing its terms, conferring with an attorney, or questioning the meaning of any provision of the Agreement before signing it. *See Morris*, 84 N.Y.2d at 30; *Nayal*, 620 F. Supp. 2d at 572–73 (rejecting plaintiff's argument that arbitration agreement was procedurally unconscionable where there were no allegations of "high pressure tactics or any other form of coercion").

Plaintiff further argues that the Partner Agreement was procedurally unconscionable because other individuals at Ayco and Goldman Sachs primarily drafted the terms of the Partner Agreement, including the arbitration clause. (Dkt. No. 33, ¶ 21). That fact, however, would not render the Agreement or the arbitration clause procedurally unconscionable. *Sablosky v. Edward S. Gordon Co., Inc.*, 73 N.Y.2d 133, 139 (1989) (rejecting the plaintiff's argument that employment agreement "prepared by the employer or the employer's attorney" was procedurally unconscionable, noting that "almost all employment contracts are prepared by the employer; that circumstance cannot render the arbitration clause contained in the contract unconscionable").

### b. Substantive Unconscionability

Plaintiff argues that the arbitration provision is substantively unconscionable because: (i) it "would result in Plaintiff not being able to sue the Individual Defendants in court for their violation of the NYSHRL, but at the same time, she would be unable to compel them to submit

12

these very claims to arbitration";[6] and (ii) "it is time to stop large employers like Ayco and Goldman Sachs" from using "arbitration as a means to keep their practices from public scrutiny." (Dkt. No. 35, at 20–21).

The caselaw on which Plaintiff relies regarding her NYSHRL claim are cases in which courts have declined to enforce an arbitration clause as a matter of federal law because the arbitration provision "impermissibly burdened the plaintiff's *federal statutory* rights." *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 78–79 (S.D.N.Y. 2012); *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (concluding that waiver of class-action antitrust claims in favor of individual arbitration of those claims was not impermissible waiver of "right to pursue" *federal* statutory remedies); *Ragone*, 595 F.3d at 126 (concluding that it was "at least possible" that agreement requiring arbitration of Title VII claims might have been void had the defendants not waived enforcement of time limitation and fee-shifting provisions). Those cases examine the "'judge-made' exception to the FAA which 'allow[s] courts to invalidate agreements that prevent the 'effective vindication' of a federal statutory right." *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 298 (2d Cir. 2013) (quoting *Italian Colors*, 570 U.S. at 252 (explaining that the "effective-vindication rule comes into play only when the FAA is alleged to conflict with another *federal* law" (Kagan, J., dissenting))). Plaintiff's claims against the Individual Defendants, however, are brought under state law. Plaintiff "does not cite to any authority, nor is the Court aware of any, declining to enforce an arbitration clause as a matter of federal law on the ground that the arbitral rules burden the plaintiff's ability to vindicate his or her state-law claims." *Crewe*, 884 F. Supp. 2d at 78; *see also Frankel v. Citicorp Ins. Servs., Inc.*,

---

[6] The Court notes that Plaintiff has not moved to compel arbitration of her claims against the Individual Defendants; that Defendants urge dismissal "in favor of arbitration in which all Defendants (including the Employee Defendants) will participate," (Dkt. No. 27, at 5); and that each of the Individual Defendants has submitted a sworn declaration stating their "consent to the arbitration of Plaintiff's claims" against them. (Dkt. Nos. 37-1, 37-2, 37-3).

13

No. 11-cv-2293, 2014 WL 10518555, at *10, 2014 U.S. Dist. LEXIS 184863, at *26 (E.D.N.Y. Aug. 12, 2014) (explaining that "the vindication of rights doctrine is inapplicable to state statutory remedies" despite plaintiff's argument that arbitration would deprive him of the ability to pursue "public injunctive" remedy under New York law), *adopted by*, 2015 WL 6021534, 2015 U.S. Dist. LEXIS 139937 (E.D.N.Y. Oct. 14, 2015).

Nor has Plaintiff identified any other basis for finding the arbitration clause substantively unconscionable. Determining whether an agreement is substantively unconscionable "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Gillman*, 73 N.Y.2d at 12. "When both an employer and its employees are bound to an agreement to arbitrate, when the terms of the agreement are equally applicable to both parties, and when the employer bears any unreasonable cost of the arbitration, the arbitration agreement is not unreasonably favorable to the employer." *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013). Here, the terms of the arbitration clause mutually require that "any dispute, controversy or claim between Partner and the Firm . . . relating to or arising out of Partner's employment" is subject to arbitration. (Dkt. No. 29-3, at 16). By its terms, the arbitration clause applies equally to both parties and is not unreasonably favorable to either. It does not, for instance, forbid appeal of the arbitrator's decision or limit the time in which Plaintiff must bring her claims. *See Ragone*, 595 F.3d at 123–24. Accordingly, the arbitration clause is neither procedurally or substantively unconscionable.

**B.   Scope of the Agreement**

Having found that an enforceable arbitration agreement exists, the Court must determine whether Plaintiff's claims are within the scope of the arbitration clause. Plaintiff argues that, under the Partner Agreement, which she urges the Court to view as a collective bargaining

14

agreement ("CBA"), ADA and NYSHRL claims are nonarbitrable because they were not clearly and unmistakably listed as such in the arbitration clause. (Dkt. No. 35, at 23–25).

"To determine whether a particular dispute falls within the scope of an agreement's arbitration clause," a court should first "classify the particular clause as broad or narrow." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). If the arbitration clause is narrow, "the courts must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id.* (quoting *Rochdale Vill., Inc. v. Pub. Serv. Employees Union*, 605 F.2d 1290, 1295 (2d Cir. 1979)). "Where the arbitration clause is broad, 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'" *Id.* (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)). "In the end, a court must determine whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." *Id.* at 225 (concluding that an arbitration clause mandating arbitration of "any dispute arising from the making, performance or termination" of the agreement was broad).

Here, there is no question that the arbitration agreement is broad. It indicates that the parties mutually agreed that they "shall" arbitrate "**any dispute, controversy or claim** between the Partner and the Firm . . . **relating to or arising out of** Partner's employment with the firm or otherwise **concerning any rights**, obligations or other aspects" of her employment. (Dkt. No. 29-3, at ¶ 17 (emphasis added)). "[C]ourts have consistently held that language such as 'arising

from' an agreement exemplifies a broad arbitration clause." *Cupples v. Valic Fin. Advisors, Inc.*, No. 13-cv-4501, 2014 WL 4662272, at *6, 2014 U.S. Dist. LEXIS 131748, at *13 (E.D.N.Y. Sept. 18, 2014); *see also Donner v. GFI Capital Res. Grp.*, No. 16-cv-9581, 2017 WL 2271533, at *3, 2017 U.S. Dist. LEXIS 68405, at *8 (S.D.N.Y. May 2, 2017) ("This is a broad clause, mandating ('shall') arbitration of all claims arising under Donner's employment agreement."). Thus, the presumption of arbitrability applies. Plaintiff alleges that she was discriminated against on the basis of her disability; although the arbitration agreement does not explicitly cover discrimination, Plaintiff has not pointed to anything sufficient to overcome the presumption of arbitrability.

Plaintiff's argument that the Partner Agreement should be construed as a collective bargaining agreement is without merit. She does not cite to case law from this or any other jurisdiction in support. Although Plaintiff accurately points out that the Second Circuit held in *Lawrence v. Sol G. Atlas Realty Co.* that CBAs containing agreements "to arbitrate statutory discrimination claims must be 'clear and unmistakable,'" 841 F.3d 81, 82 (2d Cir. 2016) (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80–81 (1998)), that principle is limited to "a union-negotiated waiver of employees' statutory right to a judicial forum for claims of . . . discrimination," *Wright*, 525 U.S. at 80. This case, by contrast, "involve[s] an individual's waiver of [her] own rights, rather than a union's waiver of the rights of represented employees and hence the 'clear and unmistakable' standard [is] not applicable." *Id.* at 80–81; *see also Rogers v. N.Y. Univ.*, 220 F.3d 73, 75–76 (2d Cir. 2000) (summarizing *Wright* and explaining that "CBAs, *unlike employment contracts executed by individual employees*, that purport to waive an employee's right to bring discrimination claims in federal court must be clear and unmistakable" (emphasis added)), *abrogated on other grounds by 14 Penn Plaza LLC v. Pyett*,

556 U.S. 247 (2009); *Ahing v. Lehman Bros.*, No. 94-cv-9027, 2000 WL 460443, at *5, 2000 U.S. Dist. LEXIS 5175, at *15–16 (S.D.N.Y. Apr. 18, 2000) (explaining that, "because [the plaintiff] personally executed the agreement containing the arbitration clause . . . the only basis for plaintiff's argument that she did not waive her right to bring her Title VII claim in a judicial forum evaporates").

Here, Plaintiff does not dispute that she individually executed the Partner Agreement, (Dkt. No. 29-3, at 19), but argues that the Agreement resembles a CBA because she had "no individual bargaining power with respect to" its terms and was offered the agreement on an "as is" basis. (Dkt. No. 35, at 25). These arguments, however, are irrelevant to the reasoning underlying the "clear and unmistakable" waiver requirement in the collective bargaining context. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33–35 (1991); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 58 n.19 (1974) (noting that collective-bargaining arbitration was inadequate forum for vindicating Title VII rights due to, *inter alia*, a "union's exclusive control over manner and extent to which an individual grievance is presented" and the fact that "the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit").

Accordingly, the Court finds that Plaintiff's claims are within the scope of the arbitration agreement.

### C. Congressional Intent

The next inquiry is whether Congress intended the federal claims asserted to be nonarbitrable. *JLM Indus.*, 387 F.3d at 169. Generally, "although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue." *14 Penn Plaza*, 556 U.S. at 258 (quoting *Gilmer*, 500 U.S. at 26).

"[T]he burden lies with the party attempting to avoid arbitration 'to show that Congress intended to preclude a waiver of a judicial forum' for his claims." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 235 (2d Cir.2006) (quoting *Gilmer*, 500 U.S. at 26).

"Courts have consistently found that claims under . . . the ADA are arbitrable." *Savarese v. J.P. Morgan Chase*, No. 16-cv-321, 2016 WL 7167968, at *7, 2016 U.S. Dist. LEXIS 159765, at *21 (E.D.N.Y. Nov. 16, 2016), *adopted by*, 2016 WL 7176601, 2016 U.S. Dist. LEXIS 169982 (E.D.N.Y. Dec. 7, 2016). Similarly, Plaintiff's claims under the New York State Human Rights Law are arbitrable. *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 339, n.7 (S.D.N.Y. 2014) ("Although the Parties do not appear to dispute this issue, the Court notes that claims brought under Title VII, the ADA and New York's Human Rights Law are arbitrable."); *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 334 (S.D.N.Y. 2003) (holding that the plaintiff's NYSHRL claim were arbitrable); *Fletcher*, 81 N.Y.2d at 633 (same). Plaintiff has not identified any authority indicating otherwise. Accordingly, all of Plaintiff's claims are arbitrable.

## V. DISCRETION TO DISMISS OR STAY

"[W]hen all of the claims in an action have been referred to arbitration and a stay requested," "the text, structure, and underlying policy of the FAA mandate a stay of proceedings." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015); *see also* 9 U.S.C. § 3 (stating that, in any "suit or proceeding [that] is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").[7]

---

[7] The Court notes that, prior to *Katz*, dismissal without prejudice was appropriate where all of a plaintiff's claims were found to be arbitrable. *See, e.g.*, *Reynolds v. de Silva*, No. 09-cv-9218, 2010 WL 743510, at *8, 2010 U.S. Dist. LEXIS 18040, at *23–24 (S.D.N.Y. Feb. 24, 2010), *abrogated by Katz*, 794 F.3d at 346.

For the reasons discussed above, the Court holds that all of Plaintiff's claims against the Individual Defendants, Ayco, and Goldman Sachs are arbitrable. Although Defendants have indicated their willingness to proceed to "an arbitration in which all Defendants (including the Employee Defendants) will participate," (Dkt. No. 37, at 5; Dkt. Nos. 37-1, 37-2, 37-3), they have "not moved to *compel* arbitration," but "merely seek[] to avoid litigation of this dispute in Court," *Albtelecom SH.A v. UNIFI Commc'ns, Inc.*, No. 16-cv-9001, 2018 WL 4091071, at *6, 2018 U.S. Dist. LEXIS 146425, at *16 (S.D.N.Y. Aug. 28, 2018). And, while Plaintiff has not moved to compel arbitration of her claims, she has requested a stay in lieu of dismissal. (Dkt. No. 35, at 16-17). Accordingly, this action is stayed. *See Katz*, 794 F.3d at 343 ("Although we recognize the administrative advantages of a rule permitting dismissal, we hold that the [FAA] requires a stay of proceedings when all claims are referred to arbitration and a stay requested." (citation omitted)). The Court will schedule a telephone conference to address how the parties seek to proceed.

## VI. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 29) is **GRANTED** with respect to the arbitrability of Plaintiff's claims but is otherwise **DENIED**; and it is further

**ORDERED** that this action is stayed and a telephone conference will be scheduled by the Court.

**IT IS SO ORDERED.**

Dated: December 19, 2018
      Syracuse, New York

Brenda K. Sannes
U.S. District Judge

19